SECURITY AND PERSONNEL SAFETY Good morning and may it please the court. My name is Courtney Seleski from DLA Piper and I represent Smith & Wesson here today. I'd like to reserve three minutes for rebuttal please. Great. Thank you. The district court erred when it dismissed this matter on younger exemption grounds because this case does not meet the necessary requirements articulated by the Supreme Court or this court for abstention. As the court knows, federal courts generally have an obligation to hear cases within their jurisdiction. Tendency of an action in state court is generally no bar to proceedings concerning the same matter. Younger abstention is the exception in Sprint articulated only three exceptional circumstances under which federal court may abstain from its virtually unflagging jurisdiction or obligation to hear cases over which it has jurisdiction. Two are at issue in this case and this morning I intend to focus on those exceptional circumstances because they are dispositive. Neither supports abstention and as a result we asked the court to reverse and remand. With respect to our other arguments, we'll rest on the briefing unless the court has questions. So the court below, the district court, incorrectly held that this court, that the state court subpoena show cause action fit within Sprint's third exceptional circumstance that it was, quote, a civil proceeding involving certain orders uniquely in furtherance of the state court's ability to perform its judicial function. But Sprint at page 72 said that this was the type of case that implicates the state's interest in enforcing the orders and judgments of its court. And in Malhan v. Secretary of the U.S. Department of State, which Judge Hardeman wrote, the court here at page 463 quoted Sprint in saying that these orders are unique and noted that the Supreme Court had only cited Pennzoil, which was a bond pending appeal case, and Judici, which was a civil case. So what do we have here? In this case, we have a matter where the AG issued an administrative subpoena. This is a non-self-executing request for documents. Smith and Wesson objected to that subpoena and then filed a Section 1983 claim in federal court seeking injunctive and declaratory relief relating to the subpoena and the related investigation. Counsel, can I just go back to something you said? Do you read our decision in invocation of Judis and Pennzoil? Is it a limiting principle or is there anything, or is that not such a deal? Is that now a reading not required by Sprint itself? I don't think Malhan tried to limit Sprint. It was just examples of Sprint's third category. I assume then there could be other examples? Exactly, Your Honor. And there are other examples that we cited in our brief. But what happened here is that in this case, Smith and Wesson had sought declaratory and injunctive relief in federal court. Two months later, the AG filed to enforce the subpoena. The state court issued a show cause order and then ultimately ordered Smith and Wesson to comply with that subpoena. But nothing about that order meets the third exceptional circumstance involving certain orders uniquely in furtherance of the state court's ability to perform its judicial function. So that was really about issuing an order to help the AG perform its function. And that was to enforce the AG's non-self-executing subpoena. What more has to be done then? In order to trigger the third category, Your Honor, it has to look more like Giudici or the other cases that involved the state court's process. So there are lots of examples in this court like, actually, we'll start with Giudici, I think. So Giudici was a case where the plaintiffs had, the federal plaintiffs had already defied the state court orders and were already, at least in the contempt process, most of them had already been ordered, been held in contempt. And then the cases that we cite like Title Max and Online Merchants are similar subpoena cases, although not binding here. Robasco was in a different situation. I'm sorry, Your Honor, I couldn't hear you. Robasco, one of the two that was remaining. That's right, he had not been held in contempt. I mean, I'm sorry, he had, yes, he had not been held in contempt yet. That case is very different from this case. So what happened is there were state court orders for all of them that had ordered them to pay child support. Robasco and Ward both didn't pay child support. Ward is the one who was actually held in contempt. Robasco wasn't yet held in contempt, but there was a contempt proceeding ongoing because his wife had filed for a show cause order to hold him in contempt. Here we have something different. What we have is the AG has repeatedly said that the show cause order that was issued by the state court in our action was about compelling us to comply with the subpoena. You complied. So the compliance is ongoing right now. So under your argument, if you were held in contempt in state court, you would lose, but because you haven't been held in, because the case would be more like Giudice or Propenzole, but because you're cooperating, you really didn't do anything wrong in state court other than you asserted your rights and then you complied. That's exactly right. Okay. That's exactly right. So there's just no defiance of a court order and there's no sort of invocation of the court's special functions or defiance of the court's special functions. But an order compelling compliance with a subpoena does seem to be a quintessential example of an order in furtherance of the New Jersey court's function, doesn't it? I think if it's a judicial subpoena, that might be right. But our case, this was an administrative subpoena, so it really was an order in furtherance of the Attorney General's functions is our position. And we think that's supported by the facts and the case law that we've cited. How did the I'm sorry, Your Honor. Could you repeat the question? But the Superior Court made a ruling on the enforcement of the subpoena. It's now on appeal, is that correct? That's right, yeah. The New Jersey Superior Court ordered Smith & Wesson to comply. Smith & Wesson has complied and now that's on appeal. Why isn't the order of the Superior Court provide the necessary rightness here? So the order of the Superior Court that's on appeal, where Smith & Wesson was ordered to comply, is just really an output of the functions of the litigation relating to the compulsion request. It's not related to the judicial function. So those are really special kinds of cases. Those are cases like with judges' recusals, where people try to challenge that in federal court. But doesn't New Jersey give the Superior Court the judicial function of enforcing compliance with the administrative subpoena? It certainly does. So picking up on Judge Sareka's question then, why isn't that then an order in furtherance of the state court's ability to perform its judicial function? Because then really every judicial order would be the same. These would fall into this category, which is just not the case under the law. This is supposed to be narrow. This is supposed to be special about the judicial functioning. So in the alternative, we have the AG arguing for the Sprint second category. Just really quick, I think closing out Sprint's third category, the problem with some of the cases that were cited by the AG that are district court cases, out-of-circuit, unpublished, all of that. But they really divorce this analysis from what we've all just been talking about, which is whether these orders involve or are uniquely in furtherance of the state court's ability to perform its judicial function. And that's just really a very special class of cases. And ordering compliance with an administrative subpoena should not fall within that. The doesn't justify abstention in the alternative. That is the one where it's quasi-criminal. And it's been described by this court and by Sprint as an enforcement proceeding akin to a criminal prosecution in important respects. So the only thing that looks like a criminal prosecution here is that the civil... They've initiated an investigation. It hasn't gone anywhere. They don't have probable cause to indict your client or anything like that. That's right. That's right. So what they're arguing really is that that enforcement proceeding of the subpoena was the culmination of some investigation, but that's just not supported. If we accept your position, Ms. Zaleski, one thing that concerns me is it appears to authorize parallel litigation, competing parallel litigation. It's just not the way our system works. You, with all due respect, you've had a you've made them. They just weren't accepted. Isn't the system supposed to work that you take the matter up through the state court system? Let's even assume for the sake of argument that the attorney general is violating your constitutional rights. You argue that in the New Jersey state court. If you keep losing in the New Jersey state court, then you get the U.S. Supreme Court to vindicate your constitutional rights. That's the way our federal system works, doesn't it? We don't we don't have these sort of, you know, competing litigations where you get to take two shots at it at the same time and you hope to win on one of them. So isn't that what you're asking us to ought to greenlight here? No. No, Your Honor. So Section 1983 specifically was made to have, you know, challenges to state action where they're considered to be unconstitutional. And while it is certainly true that we raise the is no general bar to having parallel litigations, as you said, especially where Congress has authorized it. There are other sort of safeguards for this. Let's say that the federal litigation is not worthy of proceeding, then that'll get it'll get it'll be weeded out through the federal rules, the procedural rules like 12 v 6. But the the sprint was clear, and other cases have been clear that where the court has jurisdiction, there are only these three exceptional circumstances where it should abstain. And just because we're worried about, you know, parallel litigations going on at the same time is not one of them. So there may be other issues that wind up coming out of the fact that the state court ruled first or whatever, but we're not there yet. All what we're looking at now is whether it's appropriate to abstain. And under the cases, it was not appropriate to abstain in this case. That sounds like an argument or an admission that abstention may rear its head again. If we rule in your favor here, that doesn't mean there might not be abstention issues that would arise six months hence or a year hence. It's it's hard for me to say yes or no to that. I'm having trouble imagining it, although I can see I've triggered it. But I think the way to to hypothesize it is to imagine that the state court starts issuing orders that are uniquely in furtherance of vindicating the state court function. Then, yeah, I mean, in something more severe than this administrative enforcement of this administrative subpoena, I think at large part, it goes back to your hypothetical that you suggested that we would look more like judice if there had been a request. You know, there was some kind of proceeding, but that we're not there at this point. And that, you know, in reality, the productions have been made and everything appears to be proceeding smoothly and the like. Do you still argue that you're not able to raise all of your constitutional claims in the state proceeding? Um, so your honor, thank you for raising that. We we have made this argument related to our constitutional claims in our brief. But understand that that is a much more uphill battle than the sprint exceptional circumstances. And, you know, the court doesn't need to get to that unless you do find a sprint exceptional circumstance applies because that's a middle sex factor that comes later. But, um, you know, we base that on our inability really to meaningfully present the claims under the circumstances because the state court didn't attach the presumption of truth and didn't address many of our claims. And, you know, it's our position that the law around abstention and middle sex is liberal application was under our specific circumstances. We argue that we meet that, but we understand this is a hard issue and that we, you know, we just remind the court that it need not get to this one because the sprint circumstances are not met. If your honors don't have any more questions, thank you. We'll hear you on rebuttal. Thank you, Miss Selesky. Thank you. Miss Kai. Yes, that's correct. May it please the court. Last year, appellate was served with a state law consumer fraud subpoena. Its response was to refuse to turn over even one document because that is a violation of New Jersey law. New Jersey officials then did what they routinely do move to enforce the subpoena in New Jersey State Court. And in New Jersey courts, appellant raised the same constitutional issues it raises here and sought the same emergent injunctive relief. It lost at every level of the state judiciary, and it now seeks a over from the federal courts. Even though appellants have since withdrawn the request for an emergency injunction, which was always untenable because it would nullify state court orders and processes. They press on with their federal suit, which seeks to do the same. Younger doctrine requires that federal courts exercise comedy and respect for state courts, not to second guess them when one the state courts adjudicate state enforcement actions, or two, when the state court's own authority is implicated. So for these two independent reasons, younger doctrine requires that this court affirm the district court's dismissal of this case. So first I want to talk about the Sprint Category 2, and because what appellants seek to do... Is there any distinction between the enforcement of an administrative subpoena and a subpoena that would come in a civil case? Yes, Your Honor. I think that goes to what the state statute actually says. So here the Consumer Fraud Act specifies, and I'm not sure if this is true for every agency subpoena, I think you would have to look to the underlying law that gives rise to the agency's authority to issue the subpoena, but under the CFA, this is section 56 colon 8-4, the CFA subpoena itself has the force of law. And that makes this case different, because by violating or failing to comply and refusing to comply with the subpoena, Smith & Wesson has already committed a wrongful act. They could have moved to quash the subpoena during the two-month period in which they had to respond, in which case the state court could have said, well let me take it under advisement, and you know litigation on that would have continued. They did not do that. Instead, they told the state we refused to comply, and on the next day moved in federal court, but that doesn't change the fact that their refusal to comply is already a violation of state law. And that is why the Attorney General filed the state enforcement proceeding, which is to compel compliance with the subpoena, and the specific statute that provides for the state's ability to do that is called failure or refusal to obey subpoena issued by Attorney General punishment. And under the punishment listed by the CFA, it includes, and these are all sanctions the Attorney General seeks in every case like this, revoking the corporate charter, contempt, restraining sale and advertisement, and of course also ordering compliance with the subpoena. So the fact that the CFA has specified that the subpoena itself has the force of law, and when someone fails to comply, there are punishments that come with that, makes this a civil enforcement proceeding that is akin to criminal prosecution in important respects. And I will like to say that I think what counsel was trying to tell the court was that if the Attorney General wins in this case, somehow the floodgates to Younger will be open. That is not the case, because there are several requirements that are already met in this case, that are so obviously met in this case that would do the gatekeeping function to not allow this to, you know, apply to all civil proceedings or even all civil proceedings to enforce subpoenas. One of those is what I just talked about, what the law actually says and what is the law that gives rise to the civil enforcement proceeding. Of course, it's undisputed that this case was also commenced by the state as sovereign, and that in of itself is already a huge limiting principle for Younger. It can't just be that any time there's a subpoena recipient raises, that somehow creates a Younger issue. That's not the case. Here, they refuse to comply with the subpoena and the state, exercising its sovereign authority and as allowed by the statute, moved to enforce in state court. And of course, they're also, as this court has asked, you know, proponents of Younger to look for, other similarities to criminal actions. So first, I do admit there was not a long prolonged investigation in this case because the violation was so clear on its face. They were what prompted the investigation, the investigation into the subpoena or the investigation of the C. F. A. Violation itself. Did the investigation itself? What? What prompted this? I what are the statements or advertisements that prompted the investigation? Sure, Your Honor. So the investigation is still ongoing, of course, but there are several things that led the attorney general to think about and to want to start investigating whether or not the C. F. A. has been violated. Um, so first, other government agencies have been investigating Smith and Wesson for the same, and some of those allegations have moved past a judgment on the pleadings standard and other courts. And so New Jersey is interested in our New Jersey consumers also being misled by similar advertisements. So that's one predicate. So what were those advertisements? So? Yeah. So, for example, one of the things we the subpoena asked for is statements regarding the relative benefits of the product. I'm not asking what the subpoena asked for. Matt, I'm asking what statements that they made that prompted your investigation. And that's one of those, Your Honor. So what was the statement? Can you read the statement? Give me one second, Your Honor. To look for it. I do think we have that. So I'll give a couple examples, and some of these were raised in the state court briefing as well. So, um, statements on whether Smith and Wesson's firearms are the most accurate and reliable, for example. So that is a comparative or superlative statement. Smith and Wesson made an had an advertisement that said whether Smith and Wesson is reliable. A specific firearm product is quote the most accurate and reliable. So they have an advertisement that says Smith and Wesson is the most accurate and reliable? Correct, Your Honor. Okay. And was that the only one? No, it is not, Your Honor. So that was the one that I was using as an example of the comparative or superlative factual basis one. So then the other... So the statement that's being questioned is both the accuracy and the reliability of the product. Correct. Versus what? I'm sorry, Your Honor. Versus what? I Right. So if I say, you know, I have the cheapest milk for sale in the state, and that is not true, then that would be, oh, you would have to look to whether or not it's material. I mean, obviously, cheapest is easiest because we can put an arithmetic number on it. Of course. I'm just trying to understand, picking up on Tartarna's question, accurate and reliable. So what part of that... It's most accurate and reliable, Your Honor. So it's this product is the most accurate and reliable. I see. As opposed to just generally, it's great. You know, so that... I understand. Could that be characterized as puffery? I'm sorry, Your Honor? Could that be characterized as puffery? You know, I don't think so, Your Honor. Although, again, when the state investigates advertisements, it's not saying we have already decided that this is a violation of the CFA. When was that  I don't have that with me, but it is still available on the internet, so I can get that information for you if you'd like, but I'm not... But presumably it was made before the Attorney General said, we're going to turn up the heat on them? He didn't say we're going to turn up the heat on them before the ad was made, right? I don't believe so, Your Honor. I don't know the exact date of the ad, but I do want to talk about that statement because I think that statement, which counsel... It's not the Attorney General anymore. Well, that's also true. That's certainly true, Your Honor. But you've got a new Attorney General who didn't say anything about turning up the heat, right? Correct. That's an undisputed fact, but I think, you know, they like to talk about that statement, but they never really address the context in which that statement was made. So that statement was made in a tweet that cited a New Jersey... That doesn't make it better. Well, no, actually it does because the report that it is citing... Tweets are now for deliberative process of our Attorneys General. So the report itself, which is attached to the tweet, is a report of all the crime guns recovered by the state every month or every quarter, and it has information on the caliber of the gun, what county it was found in... These are really illegal guns. Illegal guns used to commit crimes or illegal guns themselves, right? And it also includes states that they came from. And in fact, that turned up the heat on other... On source states were going to turn up the heat on gun manufacturers. And the goal of that statement is to say other states, which I don't think anyone would count on as a statement, an argument that New Jersey is biased against other states, is interested in reducing trafficking of illegal guns and that other states and manufacturers should do a better job. That sounds like that's a statement or an implication of suspicion that Smith & Wesson is illegally creating guns. Are they manufacturing guns with filed-off serial numbers or no serial numbers? Are they promoting straw purchasing? Are they doing all those other terrible things that we see all the time in our... Right, but if they had said, you know, Smith & Wesson is never a participant in straw purchases or manufacturers' firearms that are used for illegal purposes, well, then I understand your point in saying, well, we're not sure that that's accurate, but you're trying to link a statement regarding criminality to... No, Your Honor, I'm just refuting... I'm sorry. I was just refuting the linkage of some kind of bad faith from that very general statement about public safety. Think about it this way. Almost every attorney general in the nation, including the United States Attorney General, has probably made some statements about opioid manufacturers and things that they've done that the state attorney general thinks is wrong. Does that mean, then, that every prosecution of an opioid manufacturer into tax evasion or any other state violation would then be imputed bad faith because they've already said something else about the company? I mean, that can't be right, right? So I think what all those questions, Your Honor, really go to something that the state court is very capable of evaluating, whether or not the subpoena was undertaken in retaliation for something else. That is something the state courts can address and has addressed, and there's no reason why that would be an exception to younger obsession that just because they've moted on part of the prosecutor then younger obsession doesn't apply. The standard is much, much, much higher than that, right? The Supreme Court has never, after Younger, held that a bad faith defense somehow nullifies Younger, and that's because you have to prove... Younger is the exception, right? I just want to make sure I understand. That's correct, Your Honor. And it is a... even in its perhaps expanded forms under Middlesex and then still the very, very narrow exception to the rule that comedy and principles of federalism allow for dual actions, that the several states are not divested of their powers just because there is a federal forum for which civil rights claims can be brought. So it has to be that there's something that gets us into the very narrow principle in Younger, not the idea that, well, oh, it could still apply. Absolutely, Your Honor, and so I... And if I could add, that idea has been shrinking, whether it's Younger or Rooker-Feldman, right? I mean, we've got some time passage from Judicy and Pennzoil, and as I'm sure, you know, you're aware that the Supreme Court of the United States has really consistently reined in the somewhat broad use of Rooker-Feldman by federal district courts and serving courts, and it's not quite as obvious what's going on with Younger, but we're constantly reminded that we have a virtually unflagging duty to take cases over which we have jurisdiction. Yes, Your Honor, and that's why we are not arguing that Rooker-Feldman applies, even though Smith & Wesson is undoubtedly a state court loser. But in Younger, I think what's clear is that post-sprint, and the opinions of this court have made clear, if it does fall into one of the three categories, then their Younger abstention is required. Right, so let's look at the third category, because quite honestly, I think you have perhaps a stronger argument on that one than on the criminal, but anyway, that's just me. Well, the district court, I guess, felt that way. I actually think the second one is actually quite clear, especially with the criminal analog, which actually discusses the impeding investigative entity is also a criminal abstention. If this is akin, you know, I'm just arguing with you here, but if this is sort of state consumer fraud investigation is akin to a criminal prosecution, that seems like a really capacious interpretation of akin to a criminal prosecution. Your Honor, I think if you, I think what we shouldn't do is look to the outcome or the subject of the proceeding, because you can have a piddly criminal prosecution for nuisance. Maintaining a nuisance is not a very large-scale prosecution, but it's not criminal. No, I'm not, I agree with you on the piddling thing. I mean, you could, this consumer fraud action could, in theory, you know, result in fines in the millions or tens of millions of dollars, so it could be very, very significant, but that's quite different than committing a crime. You know, lying about, or, you know, misleading a consumer, well, I guess your response is, well, that's a crime too, right? It certainly is, Your Honor, and in fact, there's a criminal analog to that too in state court, and so I think if you look to... In these cases, do New Jersey consumer fraud investigations sometimes or oftentimes transmute into criminal prosecutions? I guess I, you know, I'm not aware of that one way or the other. Sure, Your Honor, but I don't think the cases of the United States Supreme Court, which have never been abrogated, like Huffman versus Pursue or Treanor versus Hernandez, required that the state often uses criminal proceedings to vindicate those interests, right? The legislature has created a system of state civil enforcement for a reason, and the fact that the state often elects to go through the civil route instead of a criminal route doesn't make it any less akin to a criminal prosecution in the structural ways in which it is akin. Okay. I did want to address the third... Yeah, yeah, I want to give you time for this. Okay, thank you, Your Honor. But before we go back to that, just because, and I'm sorry to return to Twitter, but I thought we had labored mightily to distinguish the comments dealing with criminal conduct and the very gentle investigation that the state of New Jersey was writing into something that was akin to milk prices. But now we're back to talking about how, oh no, no, this is pretty quasi-criminal. In fact, it may be criminal, and all the time we see these civil actions morph into criminal proceedings. So where are we now? Your Honor, I only mentioned the Twitter because it was literally the context in which appellants raised the turn up the heat comment. It is not the basis for our investigation. It is not the basis for the subpoena enforcement. I'm just refuting... But it could be akin to a criminal prosecution, and it could spin into a criminal prosecution. So it's... The Twitter statement had never been made. My argument would be exactly the same, if that makes any sense. So put aside the Twitter for the sprint analysis. That's just for their argument about bad faith and all that, which they can't meet that standard because, for one, the state court, which is a neutral party, has already decided that the subpoena was not issued in bad faith. And I think that even has probably preclusive effects on the judgments of the federal court. But I digress. I would like to return to the sprint three. This case is Giudice's, or Giudice, however you pronounce it. The subpoenas in Giudice were issued by the party, not by the court. And while the individuals who were issued subpoenas had previously been subject to some kind of court order, the orders to show cause in the contempt proceedings were not for their failure to pay. It was for their failure to show up to the deposition, or failure to comply with that subpoena issued by the party as an officer of the court, as the Supreme Court noted. And here, the exact same situation has happened. The recipient of the subpoena has refused to comply. And Giudice is also about the entire class of people who were facing orders to show cause, just as Smith and Wesson was when the state court issued an order to show cause on, I believe it was February 20th. And the order to show cause said, you must show cause why you should not be held in contempt today. And that's because the CFA has a one-step process for contempt. If you violate the CFA by not complying with the subpoena, the state court could hold you in contempt without having issued any kind of orders. That didn't happen here. That seems, why is that not a critical distinction between this case and Giudice? Well, because in Giudice, you know, I don't even know if Plaintiff But that's not how the court in Giudice thought about the process. Thought the state court already held the federal plaintiffs in contempt. No, Your Honor. So if you look to, let me give you the exact page. So this would be 430 U.S. Reporter at 332 says, Robasco, who was one of the two plaintiffs who had standing, similarly alleged the threat of imprisonment after the issuance by the to show cause which he has not complied with. What about 329 and 330? I believe that was discussing. So you're looking at, sorry, which line are you looking at in 329, Your Honor? I'm trying to pull it out. So if I may. I thought the federal plaintiffs were held in contempt already. That's not true. Actually, that's not true, Your Honor. So there were plaintiffs who had already been held in contempt. And actually, the court decided those plaintiffs didn't have standing because they had already served the sentence of contempt or whatever, paid the fine or whatever it was. So there were only two named plaintiffs representing the class of individuals who faced an order to show cause. So not everyone in the class had been held in contempt, I would have to presume. And in fact, of the two plaintiffs, one, Ward, so this is still on page 332, had not yet been imprisoned but was facing an order of contempt that had already been issued. The second named plaintiff, who still had standing, Rabasco, had not actually been held in contempt. And that makes sense because in cases where the court is ordering someone to show cause why they should not be held in contempt, even though that person may have violated the law or may have done something wrong to merit that order to show cause, the court can always, in a discretionary way, decide not to hold the person in contempt, right? And so the order, that's the outcome of that, is actually not what's at issue here. So the process is the important part. Exactly, Your Honor. And I do think that aside... Is it the initiation of the process that we look as the date where... I think you look to, one, the relief that the party is seeking and two, the justification for that relief. So here, they are seeking, and it's complained, and it repeats in every brief, and joining all state court proceedings. And its position is the state court proceedings shouldn't even exist because I should not have to show cause why I shouldn't be held in contempt. On page... So J883, they assert that no contempt or sanctions can be issued against them. But that's exactly the opposite of what the CFA says. The CFA says state courts have the authority to hold a party who is non-compliant with a CFA subpoena in contempt. And so they argue up and down in their complaint and in their arguments, they cite Silverman v. Berkson, a case that they misread, for the proposition that the state court couldn't possibly hold them in contempt because they hadn't violated a state court order yet. But that is not... I think there's a big difference between Giudice and Penzl in this case, in the sense that here we're in the early stages. We're in an investigation here. You're gathering information, right? And that's happening consistent with an agreement between the parties, right? Yes, Your Honor. You know, Penzl Oil, you get a jury returns an adverse verdict. They're about to get hammered with billions of dollars, and they run into federal court. In Giudice, you've got a judgment debtor. You've got someone who's already judged guilty, so to speak, in a civil case. And then they're held in contempt of court. They're not responding. I mean, so those cases, you're at the end of the line, and you've got a litigant's effort to run into federal court to prevent a state court from executing its orders after cases have been adjudicated. Here, we're at the other end of the line. We're at the infancy of an investigation that may or may not result in civil complaints, may or may not result in criminal complaints. Your Honor, I don't think it's actually different from Giudice because the fact that the plaintiffs, the federal plaintiffs, were judgment debtors is not why they're held in contempt, actually. They're held in contempt for failing to obey the subpoena. So it's not a, you're a debtor, you haven't paid, now you're in contempt. But the whole point of the subpoena was to collect on the judgment. It's post-execution. I mean, it's executing on a judgment. Your Honor, the subpoena was to give relevant, information relevant to the satisfaction of the judgment. Correct. But the fact, it's the fact that they- It's what we call execution. You know, it's easy to get a judgment. It's hard to get the money, right? Yes, Your Honor. After you get your judgment, then you've got to collect on the thing. I mean- Of course. So that is, my point is, that's at the tail end of the judicial process. In this case, we seem to be relatively close to the beginning of the judicial process. We are not, Your Honor, because the judicial process here is not the eventual potential CFA merits violation, if it does or not. Well, what is the judicial process here? It is the process to enforce the subpoena. So that is the process that we brought- It's already been done, right? Well, that's exactly right, Your Honor. But when Smith & Wesson filed its federal complaint, they were seeking to enjoin that very process. Right, but that issue's moved. The administrative subpoena in the first place is because you have, presumably, some grounds under the CFA to investigate a material misrepresentation, right? So to Judge Hartiman's point, that's the beginning of the process. It's the statutory authority that the state has. It's invoking that to issue a subpoena. You're right at the beginning. It's not at the end. There's been no judgment. There's been no action, and that does seem different. And I understand you may not concede that it's a difference that matters and perhaps doesn't, but it certainly is different than the other cases where we're not looking to another proceeding that we're enforcing here, right? Your Honor, it actually does not matter if the state never actually charges Smith & Wesson with a merits violation of the CFA. Often investigations don't lead anywhere. They don't lead to charges because you can't get enough. It's outside the statute of limitations or whatever it is that you, that impedes your ability to actually bring charges into investigation. But the process that is being challenged is the state court subpoena enforcement proceeding. And when they filed their second amendment complaint, that proceeding was underway, and an order to show cause had been issued. And their argument in their very complaint was we cannot be held in contempt. They argue that up and down, and that is just not true. Because in New Jersey- It does not matter that nothing ever happens because the principles which animate Younger when it first came is this idea of interference. And if there's nothing going on, then what is there to interfere with? The interference is with the state court's subpoena enforcement proceeding. That is what they're asking this court to enjoin. They've asked for that from the day their complaint was filed, to all the stays that they've asked for from the state courts, the injunction they asked for from this court. And they're continuing to litigate this, right? They want this to go back to the district court, for the district court to find that the subpoena enforcement itself is illegal, and somehow the order of the state court would have to be undone. There are many, many other merits, non-jurisdictional issues with that. Clearly, they want the district court to say, they want to go into the district court and say, we're complying with the subpoena, but it violates our constitutional rights. Please tell us we don't have to comply with it anymore. Correct. That's what they're trying to do. Correct. But let's assume for a minute, I know you don't agree, assume that this subpoena does violate their constitutional rights. I think the question on the table is, are they entitled to a federal forum under section 1983 to tell them whether that's violating their federal constitutional rights, or are they limited exclusively to a state forum to vindicate those federal constitutional rights? And they are limited to a state forum, Your Honor. Every younger case, well, not everyone, but most younger cases, at least the ones the Supreme Court has taken up, implicate some very important constitutional claims by the federal plaintiff, right? Younger was the First Amendment. Huffman v. Pursuit was also the First Amendment, right? These are, I'm not saying that their claims are not important claims, at least they're important to them. I would disagree on the merits. But the state court is a very adequate forum for addressing those claims. In fact, they've brought literally the same arguments to the state court, and the state court has considered them. As long as it falls into... Are you familiar with the appeal that's been filed? I am, Your Honor. And do they raise the same constitutional claims that they raised? They sure do, Your Honor. In the Superior Court? Yes, Your Honor. I think the court can probably take judicial notice of the filings that have already gone up in the state court, but I know they're hard to access. So if you would like a copy of those, we're happy to send them along. But I don't think my friends from the other side would dispute that they're still raising the same constitutional claims to the appellate division in New Jersey. And that court, even if you think there's something deficient, which I think was a very thorough opinion, in the way the Chancery Division addressed those constitutional claims, as this court held in Gonzalez v. Waterfront Commission, the appellate division is a perfectly fine opportunity for them to address those. And I do want to talk about their argument that somehow the summary nature of the state court proceeding prevented them from addressing. That's first of all, they could have moved to not have a summary proceeding. And also, they raised all the same arguments they would be raising here anyway. So I do think, Your Honor, there are a lot of issues at stake here. But the key is that whether you want to do it through Category 2 or Category 3 of Sprint, the subpoena enforcement proceeding is the state civil enforcement proceeding. And that is their challenge. They want to enjoin that proceeding. That's the nature of it. And I understand that you may think it's not super important or an early phase. But that is still a state enforcement proceeding. And it is still one that they want to prevent the state court from even having the ability to adjudicate. And that is an assault on the state court's power and on its ability to judge constitutional issues. And that is exactly what Younger tells federal courts to abstain from. So for these reasons, the district court's decision should be affirmed. Thank you. Thank you, Ms. Carr. We'll hear the rebuttal of Ms. Zaleski. Thank you, Your Honors. I just have really three points. Before you jump in, I want to make sure I'm understanding correctly what you're seeking. You want a remand to the district court so you can argue to the district court that what's happening in the consumer fraud investigation violates your federal constitutional rights. And you want that to be stopped. That's right. Okay. But I think that's slightly different than what you said before, which is that we want the court to say that the subpoena is unconstitutional and we shouldn't comply with it. This is the distinction with the federal action. It's about something broader. It's about the district court. Yeah, that's a good clarification. It's not inconsistent to say that there's nothing illegal about the subpoena, but the action itself violates your rights. That's exactly right. That's exactly right. Good, good clarification. But assuming that the state court is an adequate form, I know you don't agree, but it's an adequate form for you to vindicate your federal constitutional rights, I guess your response is the federal form is available to you also. There's nothing that tells you the federal form is closed because of the spread factors. That's exactly right. So there are just some cases where the federal form is not closed, and this is one of them because we don't have a unique circumstances defined by spread. Are there any cases like this that you can cite? And by like this, I mean a state administrative agency is investigating somebody for whatever reason. Yeah. It doesn't have to be advertising. There's some degree of state judicial process involved, and the federal court stops it and says, what the state is doing violates plaintiff's constitutional rights. Are we going to be the first court to authorize that sort of thing? I'm just not familiar with other cases where this has happened. Yeah, no, I mean, there's certainly, I can't cite them right now, but they would be in our other sort of substantive briefing. There's certainly cases where courts have addressed the constitutionality of subpoenas in the section 1983 action context and have held them invalid. So it would be analogous to that. Can you give examples of those? Yeah, there's one called Longshoreman's. It's not cited in our briefing here. NAACP is cited in our briefing. I think that's an example of it, but these are really sort of getting into our substantive issues, which I understand. The NAACP Alabama case where they were trying to get the membership list of the NAACP. That's right. That's right. And there are a lot... That violated the First Amendment rights of the NAACP. That's exactly right. That's exactly right. So just real quick on Giudice. That's, I know I said this before, but I cannot tell you how different that case is if we spend time with the facts, because even Rabasco, who's the one that the AG says we're like, we're most like, he had been, the court had ordered him to show cause why he shouldn't be held in contempt because he hadn't paid his child support, and he failed to comply with the show cause order. So we would have had to fail to comply with the show cause order before the state court to fit into that Rabasco situation. We didn't. And so he failed to comply with the show cause order. So a contempt proceeding had begun. And that is not what we have here, no matter what is said in this briefing. In reality, what happened at the state court, it just, by the way, there'd be no limiting principle if we say every time the contempt process could be invoked that that might be a civil enforcement proceeding uniquely involving the state court functions, because I could be held in contempt today. Every state court, every court action, every court hearing involves potentially the contempt process. You have to look at whether this is one of those cases that does involve the contempt process and order, like Judice, and it's not. The AG, the only thing that even tangentially involved contempt at the state court was that the AG had listed this in their verified complaint, that this was one of the things that they may seek. But, but, that's of no moment, because the AG, that referenced site to the statute, that had nothing to do with defiance of a court order. That was defiance of a non-self-executing AG subpoena. So you're still not in uniquely in forbearance of the court's judicial function land yet. Second, the AG, before the district court, repeatedly said that he was not seeking contempt. So even though it was just a listed sanction, he said he wasn't seeking it. You can see that at JA-210 and JA-548. And third and finally, even assuming arguendo, that he was pursuing contempt, no contempt could have issued because contempt of court in New Jersey State, and generally, as far as I've seen, cannot issue unless you defy a court order. That is Silverman. That is a case that the AG, if you read their brief, didn't even touch on. Today, AG gets up, says, we've read that case wrong. You know, we're wrong. We're wrong. It doesn't apply. That argument's never been made before this court. And we submit that that is absolutely waived. They have not engaged with the New Jersey law that does not allow for contempt of court unless and until there's defiance of a court order. So either that silences agreement or it's waiver. But they can't get up here today and says that contempt was an option for the court under New Jersey law in these circumstances. So just a couple more things. I'm struggling with the contempt distinction because what I hear you arguing is that you're entitled to a federal form here because this didn't go so far as to result in a contempt order, like Giudice and Giudice. But if we take the same hypothetical and say that the state system, including the state court, is just blatantly depriving someone of their constitutional rights, somehow the state court can continue to deprive someone of their constitutional rights as long as they've already issued a contempt order. Because that cuts it off. That's a good point. But as long as they're, you know, violating, they can't get away with violating people's rights up to a point. But if they take it even farther, it's insulated from federal court review. That seems like a backwards rule. I hear Your Honor's concerns. I think there are a couple of things. One, I think when it's really about the state court's function, there's more deference to the idea that you're sort of co-sovereigns or co-judiciaries. And so you sort of think about it a little bit differently. But also, you know, Sprint is the exception, not the rule. But there are exceptions to the exception. So I think there's probably a way to deal with that in equity, if that were the case. And of course, we're not talking about that here today. I want to just sort of touch on this wrongful act idea that we've heard a lot about. I think the AG spent most of the time on that second Sprint factor quasi-criminal and calling our non-response to their subpoena a wrongful act. But there's simply nothing wrong, wrongful, about objecting to an administrative subpoena and bringing a good faith legal judge. I didn't take that to be their argument here today. I mean, challenging the scope or legitimacy of the subpoena is just litigation. That's not a wrongful act. But I thought Ms. Kai's argument was that these are grave matters. These consumer fraud investigations can result in severe penalties, civil and sometimes can morph into criminal prosecutions. What's your response to that? That's right. You're right, Your Honor. But that is a hypothetical future action, which the case law wouldn't support as the basis for the younger abstention. And if you look at their brief, that's actually not what they're arguing. It doesn't make a ton of sense to me. But what they argue is that the investigation and the formal complaint that followed was their investigation into our non-compliance with the subpoena. And the formal complaint was the verified complaint seeking to cause compliance. So they're not focused on that CFA and the grave matters at all to try to argue that that was a quasi-criminal proceeding. They're focused on the idea that we should have complied with the subpoena. They did an investigation to determine we didn't comply with the subpoena. And then they filed the verified complaint. I've never seen that argument before. I've never seen it adopted before. I think it is a stretch to say the least, especially if you look at the types of wrongful acts that you would be thinking about like in PDX, where you had tax evasion, or in Gonzales, where you had sworn false statements. Those are the types of wrongful acts that I think the court and the Supreme Court cases support that as well. So unless the court has further questions, we'd ask that the court reverse and remand. Thank you very much, Ms. Gillespie. Thank you, Ms. Cai. Excellent briefing and argument. We'll take the matter under advisement. Thank you, Your Honors.